People of the State of Illinois, Defendant in Error, v. Robert Baker, Plaintiff in Error.

Gen. No. 49,692.

First District, First Division.
November 30, 1964.

Julius H. Shapiro and Gerald. M. Sachs, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney, of Chicago, Fred G. Leach, Assistant Attorney General, Elmer C. Kissane and Robert K. Kelty, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Robert Baker, was convicted of strong-armed robbery in a trial by jury, and was sentenced to the Illinois State Penitentiary for a minimum term of one year and a maximum term of ten years. The defendant filed a writ of error in the Supreme Court of Illinois and the case was transferred to this court.

A reversal is sought on the grounds that the trial court should have declared a mistrial because of prejudicial testimony given by a police officer; that the prosecutor in his closing argument improperly made reference to defendant's failure to testify and referred to evidence not in the record.

The record discloses that the complaining witness, Philip Canchola, was returning home early on the morning of February 5, 1959 after spending the evening having dinner and drinks with friends. While waiting on the elevated railway platform and feeling intoxicated ("high" in Canchola's words), the defendant, Robert Baker, with whom Canchola was not acquainted, struck up a conversation with him. They sat together on the train and when they got off together the defendant suggested that Canchola should have some coffee, but not finding a restaurant open, Baker suggested that they go to his room for coffee. This they did and in the defendant's room, he and the codefendant, Donald Edwards, demanded the complaining witness' money. Edwards took his wallet containing six dollars and then pushed him down on a couch and, while Baker held him, took a sweater, slacks and a belt off his person. Edwards also took Canchola's top coat and ring, which he said cost him $325. After giving him some old clothes, defendants pushed Canchola out of the room whereupon he called the

police to whom he gave a statement describing the defendants and the items taken from him.

In an unsuccessful attempt to find the defendants, Canchola and two detectives went to the hotel where they met Mrs. Mabel Goodrich, the hotel manager, who was unable to help them on that occasion. Mrs. Goodrich testified at the trial that she had rented a room in the hotel to Baker, Edwards and his wife (sometimes referred to as the "Lorenson girl") and that when she first saw Canchola in the company of the detectives he was wearing the khaki pants and jacket which she had seen Baker wearing previously.

On the evening of the day in question, the detectives returned to the hotel and found Baker, Edwards and his wife, at which time Baker admitted that he had robbed Canchola and that he had pawned the ring, the ticket for which he gave to the detective. At the time of arrest, each defendant was wearing clothing which Canchola identified as his. Subsequently, Canchola identified the ring at the pawnshop.

At the trial, the clothing and the pawn ticket were received in evidence. The defendants offered no testimony on their behalf, but they did cross-examine Canchola in an attempt to show that he went to the defendant's room for an immoral purpose which Canchola denied.

The defendant first contends that the trial court erred in refusing defendant's request for a mistrial which was based on Detective Davern's testimony about his conversation with the Lorenson girl. After Detective Davern testified that Baker admitted the robbery and gave him the pawn ticket, he was asked by the Assistant State's Attorney "was there any further conversation?" Davern answered that he asked the Lorenson girl in the presence of Baker,

Edwards, Mrs. Goodrich and Davern's partner what she knew about the robbery. He testified that the girl answered that she knew about the robbery but wasn't there, and she added, " 'what's the difference, he's a queer, anyway.' I said, 'would it be all right if you murdered him?' She said, 'I guess so.' " Upon defendants' objection to this testimony the court recessed to his chambers. Counsel there objected to the testimony referring to murder on the grounds that it was highly inflammatory and that his client should not be bound by statements of a disassociated third party. The trial judge said he didn't hear the reference to murder even though he was sitting right alongside the witness. The judge told counsel he would instruct the jury to disregard the statement and strike it from the record adding "it may be prejudicial. I hope not." The jury was instructed to disregard Davern's testimony regarding his remarks about murder.

██ The events at the trial constitute reversible error only if they could reasonably have affected the result. Where it appears that improper remarks do not constitute a material factor in the conviction, or that they are of such a minor character that prejudice to the defendant is not their probable result, the verdict will not be disturbed. People v. Berry, 18 Ill2d 453, at 458 and 460, 165 NE2d 257 (1960) and the cases there cited. The conversation objected to in this case was, in our judgment, an inadvertent comment which, when considered together with all the evidence in the case, could not have inflamed the jury. We consider that the remark of Davern was unfortunate, but, in our opinion, harmless, in that it had absolutely no effect upon the jury's decision. The defendant's motion for a mistrial was therefore properly overruled.

Defendant next urges that it was error for the Assistant State's Attorney, in his closing argument, to refer directly to the defendant's failure to testify because such reference violates section 155–1 of chapter 38, Smith-Hurd Illinois Annotated Statutes which provides, in part, as follows:

> . . . a defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect.

In his argument the prosecutor, after informing the jurors that they would be instructed that they are the sole judges and should be guided only by the evidence they heard from the witness chair, stated, "and you have heard nothing from this witness chair to deny or contradict or controvert" at which point he was interrupted by defense counsel's objection to the remark which was overruled.

We cannot agree that there was error in the prosecutor's remark. Defendant's reliance on People v. Cheney, 405 Ill 258, 90 NE2d 783 (1950), is misplaced, for in that case the prosecutor repeatedly told the jury over objection that defendant had the right to take the stand in his own defense if he chose to do so. In the case at bar, however, the remark was not repeated and we do not believe that the prosecutor was directing the juror's attention to the fact that defendant did not testify, but only to the fact that the state's evidence had not been controverted by any witness for the defense.

Indeed, it is clearly the law of Illinois that the statute relied on by the defendant does not prohibit the prosecution from referring to the testimony of its witnesses and then calling attention to the

426

fact that such testimony has not been contradicted. In People v. Norman, 28 Ill2d 77, 190 NE2d 819 (1963), the Supreme Court in discussing the statute in question said:

> Although the prosecutor emphasized the un-contradicted character of the People's case, there was no evidence whatever presented by the defense, and statements pointing out the fact that the People's case was uncontradicted are not a reference to the failure of defendant to testify within the meaning of this statute. (28 Ill2d at page 81, 190 NE2d 819.)

In the instant case the testimony that the defendant admitted his crime was not denied or contradicted and the evidence that the defendant was wearing the clothes of the complaining witness and that he had given the detective the pawn ticket was not controverted.

■ ■ Defendant's last assignment of error is that reference was improperly made to the "ring" in the closing argument by the state because the ring was not itself in evidence. In his argument the prosecutor referred to a $350 ring that was stolen by the defendant. The evidence showed that the ring belonging to the complainant was stolen by defendant and that he produced a pawn ticket which enabled the detective to recover it. A subject may be commented on by counsel in his closing argument if it is proved either by direct evidence or is fairly inferable from the facts and circumstances proved and has a bearing on the issue. People v. Weber, 401 Ill 584, at 601, 83 NE2d 297 (1949) (cert den 336 US 969). The fact here was proved by direct evidence and hence no error was committed in permitting reference to it in the closing argument of the state. Nothing in People v.

McCann, 247 Ill 130, 93 NE 100 (1910), which is relied on by the defendant, is contrary to this conclusion. In that case counsel sought to argue on the basis of documents and records which, unlike the evidence here, were neither physically in evidence nor referred to in the testimony.

The judgment of the Criminal Court is affirmed.

Affirmed.

MURPHY, P. J. and KLUCZYNSKI, J., concur.