(No. 39325.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* S. EDWARD BLOOM, Appellant.

*Opinion filed September 23, 1966.*

A. Bradley Eben and Herbert F. Friedman, both of Chicago, for appellant.

Daniel P. Ward, State's Attorney, of Chicago, (Edward J. Hladis, Gerald J. Mannix and Ronald Butler, Assistant State's Attorneys, of counsel,) for the People.

Mr. Chief Justice Klingbiel delivered the opinion of the court:

On petition by the State's Attorney of Cook County the appellant S. Edward Bloom was held in contempt of court for filing a spurious will for probate. He was sentenced to confinement in the county jail for a period of 24 months. In his direct appeal to this court he contends that he was denied

the constitutional right to a jury trial, that the sentence is excessive, that prejudicial argument was made by the prosecutor, that the petition was not properly verified and that by taking information and evidence on the merits in chambers prior to trial the court committed prejudicial error.

The State's Attorney's amended petition, filed on November 18, 1964, alleged in substance that William A. Melody died on July 6, 1964, that thereafter Pauline Owens, a practical nurse for the decedent, engaged defendant, an attorney, to prepare and cause to be signed a purported will of the decedent bearing the date June 21, 1964, and that defendant, knowing the document to be false, presented it for admission to probate. Hearings were held in February, 1965, at which the evidence showed beyond dispute that defendant prepared the document and offered it for probate knowing it was prepared after the testator's death. It is unnecessary to relate the details here, for defendant concedes that the evidence is sufficient to support the finding. He maintains, however, that the alleged conduct, if true, would constitute the crime of forgery punishable by imprisonment from one to fourteen years, that it would be an indictable offense in a prosecution for which he would be entitled to a jury trial, and that since he can be punished, as here, by a severe prison sentence he was entitled to a jury trial in the present contempt proceeding.

We cannot accept the contention. However serious it may be, a criminal contempt is an offense against the court as an organ of public justice, not a violation of the criminal law, and the right to trial by jury is not available. (*People ex rel. Martin* v. *Panchire,* 311 Ill. 622; *People* v. *Severinghaus,* 313 Ill. 456.) The reason for the rule is not that a contempt is comparatively petty or trivial but that a summary proceeding for punishment is essential to performance of the judicial function. "To submit the question of disobedience to another tribunal, be it a jury or another court,

would operate to deprive the proceeding of half its efficiency." (*In re Debs,* 158 U.S. 564, 595, 39 L. Ed. 1092, 1106.) The reason exists with equal force whether the offense is petty or grave. A test which would make the right to a jury trial depend upon whether the contemnor's conduct was serious or petty—or a rule which would limit the penalty which could be imposed, simply because a jury trial was not had or waived (*cf. dictum* in *Cheff* v. *Schnackenberg,* 384 U.S. 373, 16 L. Ed. 2d 629, 634)—would lead to nothing but incongruity and confusion, and would have no relation whatever either to the nature of the proceeding, or to the purpose of trial by jury.

A contempt proceeding is not a criminal prosecution but a proceeding to vindicate the dignity of the court and enforce its orders. The power to punish in such cases does not depend on constitutional or legislative grant but is inherent in all courts as necessary for self-protection. It is an essential auxiliary to the administration of the law. (*People ex rel. Brundage* v. *Peters,* 305 Ill. 223.) The nature of contempt proceedings as distinguished from criminal prosecutions has long been recognized. Thus in 1812 the United States Supreme Court, in holding the judiciary could not exercise a common-law criminal jurisdiction, explained the difference as follows: "Certain implied powers must necessarily result to our Courts of justice from the nature of their institution. But jurisdiction of crimes against the state is not among those powers. To fine for contempt—imprison for contumacy —inforce the observance of order, *etc.,* are powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others; and so far our Courts no doubt possess powers not immediately derived from statute; but all exercise of criminal jurisdiction in common law cases we are of opinion is not within their implied powers." (*United States* v. *Hudson and Goodwin,* 7 Cranch 32, 3 L. Ed. 259.) Since the time of the *Hudson* case there has been a long unbroken line of decisions, both in this

court (see *People* v. *Goss,* 10 Ill.2d 533, 548,) and the Supreme Court of the United States (see *Green* v. *United States,* 356 U.S. 165, 183, 2 L. Ed. 2d 672, 687,) declaring and re-affirming that criminal contempts are not subject to jury trial as a matter of constitutional right. And the exercise of summary contempt power is not restricted to offenses that may be classified as "trivial" or "petty" but applies as well—perhaps its exercise is even more important —where the offense is a serious one. (*United States* v. *Barnett,* 376 U.S. 681, 12 L. Ed. 2d 23.) Since there now exists a right of review in contempt proceedings, adequate protection is afforded against errors and abuses in a trial before the judge. The history and reasons for the rule applied here are extensively set forth by the opinion in the *Barnett* case and need not be further discussed here.

The remaining contentions are of relatively less importance and warrant little discussion. The defendant's objection that the sentence is excessive is supported by no reasons on the merits. He asserts merely that he could be sentenced only for such period as is provided for petty crimes, or misdemeanors, and that the maximum sentence to imprisonment other than to a penitentiary is one year. There is no merit in the position. Provisions of the Criminal Code relied upon apply only to offenses defined in the Code, not to contempts of court. *People* v. *Stollar,* 31 Ill.2d 154, 159.

It appears that shortly after the spurious will was offered for probate, the court, on motion of one of the heirs, appointed an *amicus curiae* to investigate the conditions attending its execution. A report was subsequently delivered to the judge but was not offered to defense counsel for examination until the trial had begun. After counsel had perused the report he was required to return it. The report was not made part of the record. Without relating its contents the defendant argues that his right to due process was violated by this "private investigation on the part of the court," by the failure to call the investigator as

a witness; and by the court's refusal to make the report a part of the record on appeal.

This contention is likewise without merit. The record does not show, nor does the defendant indicate, how the report and its presentation to the judge worked any prejudice or harmed him in any way. The appointment of an *amicus curiae* to make an investigation has heretofore been recognized as proper (*People* v. *Goss,* 10 Ill.2d 533) and the evidence, all of which was heard in open court, not only is ample to sustain the finding but is largely undisputed by defendant.

Once again relying upon criminal cases and provisions of the Criminal Code, the defendant insists that the judgment should be reversed because of a comment by the State's Attorney in his final argument to the court. In his argument the latter observed as follows: "At the completion of this trial last Thursday, and, at the completion of all of the evidence, your Honor must have been found wondering, as I was found wondering, just what the defense is in this case. The defense has failed to produce any evidence or any witnesses in contradiction of the People's case. The defense has failed even to produce the defendant."

It is contended the reference to defendant's failure to testify deprived him of a fair trial and violated the statute declaring, in part, that "a defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect." (Ill. Rev. Stat. 1963, chap. 38, par. 734.) We do not think reversible error has been shown. The statute does not prohibit the prosecution from referring to the testimony of its own witnesses and commenting that such testimony has not been contradicted. (*People* v. *Baker,* 53 Ill. App. 2d 421.) The case was tried by the court, of course sitting without a jury, and while the remark about the failure to "produce" the

defendant may have been improper, it does not appear that the judge was influenced by it. The evidence was such that there could not reasonably have been any other finding than guilty, and there is no presumption that the judge was influenced by the comment. Under such circumstances the argument, if improper, was not prejudicial. *People* v. *Corry,* 349 Ill. 122, 126—127.

Defendant finally complains that the petition upon which he was tried was insufficient because it was verified mostly on "information and belief" instead of being positively verified. We have examined the petition, as well as subsequent proceedings in the case, and find that any defects therein are matters of form only and have been adequately cured. The petition was sufficient to bring the facts of the alleged offense to the attention of the court, and defendant's contention must be rejected. Cf. *Flannery* v. *People,* 225 Ill. 62, 68—69.

From a careful consideration of the record we can find no reversible error. The judgment of the circuit court of Cook County is affirmed. *Judgment affirmed.*