**People of the State of Illinois, Plaintiff-Appellee, v. Sidney Carver, Defendant-Appellant.**

**Gen. No. 50,449.**

First District, Fourth Division.

December 2, 1966.

James C. Hardman, of Chicago (Singer and Hardman, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard T. Buck, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSE CHARGED IN THE INDICTMENT

Armed robbery. Ill Rev Stats, 1963, c 38, §§ 18–1(a) and 18–2(a).

JUDGMENT

After a jury verdict finding defendant guilty, the court imposed a sentence of 30 to 50 years.

POINTS RAISED ON APPEAL

(1) The charge was not proved beyond a reasonable doubt.

(2) Defendant was prejudiced by the State's Attorney's closing argument.

(3) Defendant was prejudiced by the admission into evidence of the codefendant's confession.

(4) The sentence is excessive.

EVIDENCE

The facts are essentially uncontroverted.

Defendant Carver entered the Fifth Avenue Grill at about noon on April 25, 1964 and seated himself on the stool nearest to the kitchen and farthest from the door. His order was taken by James Perkins, owner of the grill. A few minutes later, co-defendant Cook [1] entered and sat down near the door, also placing an order with Perkins. The latter then went into the kitchen and, when he returned, was confronted by Carver who had a gun in his hand and was pointing it at Perkins. Cook had also drawn a gun and had stationed himself behind the curtain at the front door. Carver announced, "[t]his is a stick up" and ordered Perkins and several young children into a small office behind the grill, where he had them lie down on the floor. Perkins informed Carver that all the money he had was in a money bag on the couch. Carver, not satisfied with what he found in the bag, asked where the rest of the money was hidden. He then ripped open Perkins' trouser pocket and extracted a wallet containing ten dollars.

At this point Cook called to Carver that one of the children had escaped the premises, but Carver told Cook that that was Cook's concern. Carver then said to Perkins, "I am going to ask you one more time, where is that money?" [2] When Perkins denied having any more,

---

[1] This appeal is by Carver only. Cook filed a separate appeal which is also decided this day under No. 50,446.

[2] Perkins testified that he had won $1,500 gambling the evening before, but had deposited the money in a bank that morning.

In Cook's confession, referred to later in this opinion, he stated that he had been told Perkins had won $1,500.

249

Carver cocked his gun and ordered Perkins to turn his head away. Perkins testified that he complied immediately and when he had done so he "heard the thing snap." Just then Cook cried out, "[t]hey are coming" and the police arrived. Officer Guzzoffi entered and saw two men, whom he identified as Carver and Cook, standing in the back room with guns in their hands. Cook was apprehended at once and was identified by Perkins as one of the robbers.

Carver, not heeding the officer's order to surrender, ran out the back door to the alley. Shortly before that moment, Officers Roney and Johnson, cruising the neighborhood, received a radio call that a robbery was in progress. Roney then saw Carver, wearing a three-quarter length black leather coat, black trousers and white shirt, and carrying a revolver and a money bag while running from the rear of the building. Roney's order to halt was ignored, so he fired three shots at Carver, who then turned into a yard, seized another man and pushed him into the entrance of an apartment building. Roney followed and proceeded to the third floor where he was admitted to an apartment by Florence Vance who gave permission for a search of her premises. Carver was in the apartment, now dressed in a red sweater, and putting on an appearance of being at home. He said that he lived there with relatives and was eating his dinner, but he was breathing heavily and was identified by Roney as the man he had been pursuing. The police found a money bag, a gun and a black leather coat in the apartment. All these items were identified by Roney as the ones he had seen on Carver and in his possession.

When the gun was found by Roney it was fully loaded and the bullet in the firing position bore a dent on its primer indicating, according to police testimony, that it had been struck by the hammer but had failed to discharge.

Carver was arrested at the apartment and taken to the grill where Perkins made a positive identification of him as one of the robbers.

Walter Harris had been standing in the alley waiting for his girl friend, Florence Vance, who lived in the apartment building there, when he heard some shots and suddenly saw Carver running around the corner. Carver grabbed Harris and forced him into the building and to Miss Vance's apartment. There Carver took her 17-year-old brother into a bedroom, stripped a red sweater from him and put it on himself. Then the police arrived. Harris identified the gun, the money bag, and the leather coat as having been in Carver's possession, and they were all introduced into evidence. Florence Vance corroborated the testimony of Harris as to the happenings in her apartment.

OPINION

██ (1) Defendant complains that the facts in evidence did not prove him guilty of robbery beyond a reasonable doubt, but that he was found guilty only because from the testimony about snapping the gun, and the State's Attorney's comment thereon in argument, the jury looked upon him as a potential murderer. They no doubt did so; and this he no doubt was, as disclosed by the proof. But this was incidental to the proof of the crime charged, and we find no error in the way this feature of the case was presented as part of a continuing narrative encompassing the entire event. People v. Marose, 10 Ill2d 340, 343, 139 NE2d 735. "A party cannot by multiplying his crimes diminish the volume of competent testimony against him." People v. Lenhardt, 340 Ill 538, 545, 173 NE 155, quoting with approval from State v. Adams, 20 Kan 311. As to the propriety of the State's Attorney's comment on the evidence and legitimate inference to be drawn therefrom, see People v. Smith, 24 Ill2d 198, 200, 181 NE2d 77,

and cases there cited. We find no merit in defendant's first point.

(2) Next, defendant contends that another part of the prosecutor's closing argument was so prejudicial as to require reversal. The comment in question was:

> They have both been represented by counsel, they have both been given every opportunity to present whatever they wished to present, if they wished to present anything. And you have not heard any concrete contradiction to this.

The alleged prejudice arises from the fact that the defendants had not testified, and it is claimed, therefore, that the argument quoted constitutes comment on that fact, in violation of the logical extension of an accused's constitutional privilege against self-incrimination.[3]

The State attempts to answer this point (in part) by suggesting that defense counsel had opened up the question in a way which permitted the State's Attorney to respond in the manner quoted above. The record does not support the State in this regard. The argument of defense counsel merely asked the jury to consider that one of the State's key witnesses, Officer Roney, had been impeached by his own testimony elicited on cross-examination. He also pointed out that the State had the burden of proof, and that the defense did not put on evidence because it was felt that the State had failed to meet this burden. Further, he mentioned that no inference or presumption of guilt was to be drawn from the failure of defendant to present testimony. These statements by defense counsel did not justify the State's

---

[3] Of interest on this subject, generally, are the opinions in *Griffin v. California*, 380 US 609, striking down a California constitutional provision authorizing such comment by court and counsel. Such procedure was held to be forbidden by the Fifth Amendment to the United States Constitution, as made applicable to the states by the Fourteenth Amendment.

Attorney's comment, quoted above, as coming within the rule which permits answering or retaliatory argument when it has been provoked or invited by the argument of opposing counsel. Thus, the cases cited by the State are not controlling. People v. Smith, 24 Ill2d 198, 200, 181 NE2d 77; People v. Brown, 30 Ill2d 297, 303, 196 NE2d 664; People v. McElroy, 30 Ill2d 286, 291–292, 196 NE2d 651.

■ For many years there has been a statute in Illinois providing that a defendant's "neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect." Ill Rev Stats, 1963, c 38, § 155–1. Our decision on this point thus involves application of this statutory rule to the State's Attorney's comment in this case, and if the statute has been violated a reversal would be required. People v. Annis, 261 Ill 157, 103 NE 568.

Defendant argues that it is difficult to understand how a description of the State's evidence as being uncontradicted, could be considered as anything other than a reference to or comment upon the fact that defendants had not testified; that this is especially true in this case since, from the testimony of the State's witnesses, it appears that the only persons in a position to furnish contradictory testimony would have been the defendants themselves.

In Desmond v. United States, 345 F2d 225, 226–227 (1st Cir, 1965) a very similar situation was presented to the court, except that no federal statute pinpoints the right of the defendant as the Illinois statute does. The prosecutor's statement was:

> Those are the facts, the evidence. Incidentally, may I say to you that the evidence stands unimpeached and uncontradicted.

An objection was overruled, but the trial court did charge the jury that no inference should be drawn from the defendant's failure to take the stand. The Court of Appeals did not consider this to have been a sufficient protection of the defendant's rights in this regard, and reversed the conviction because of the resulting prejudice to the defendant's case. That court said:

> "No one but appellant (or his co-defendant, whom appellant could not put on the stand against his will) could have contradicted the government witness."
>
> . . . . . .
>
> "Unless it is apparent on the record that there was someone other than himself whom the defendant could have called, the comment of necessity pointed to the only person who could have offered the contradiction, the defendant himself."
>
> . . . . . .
>
> "The government made the argument because it thought it would be effective. We can think of no effect other than to invite the jury's attention to the fact the defendants had not taken the stand."

If the instant case were one of first impression in Illinois we might be inclined to agree with the Desmond court, because it would seem that so vital a right or privilege should not be subjected to cancellation by the skill or adroitness of a prosecutor in skirting the obvious intent of the statute and the constitutional base from which it stems.

This is not a case of first impression, however, and we consider ourselves bound by the Supreme Court's treatment of this problem in People v. Norman, 28 Ill2d 77, 80–81, 190 NE2d 819.

In the Norman case the court said at page 81:

This court has held that a prosecutor could properly call the attention of the jury to the fact that the State's evidence was uncontradicted even though the circumstances were such that the defendant was the only person who could have denied the People's evidence. (People v. Keagle, 7 Ill2d 408; People v. Novak, 370 Ill 220; People v. Birger, 329 Ill 352.) Although the prosecutor emphasized the uncontradicted character of the People's case, there was no evidence whatever presented by the defense, and statements pointing out the fact that the People's case was uncontradicted are not a reference to the failure of the defendant to testify within the meaning of this statute.

For similar determinations see also People v. Baker, 53 Ill App2d 421, 203 NE2d 185; and People v. Jones, 33 Ill2d 357, 363, 211 NE2d 261.

It is our conclusion, therefore, that the comment of the State's Attorney was not prejudicial.

(3) At the conclusion of Officer Roney's testimony various State exhibits were offered into evidence, including a written confession signed by codefendant Cook. Over timely objection by defense counsel the entire confession, including incriminating references to defendant Carver, was read to the jury. Immediately before the reading of the confession the court orally instructed the jury as follows:

It is the statement of the defendant Cook only, and is to be regarded only as his statement. Even though the evidence up to now has placed the defendant Carver present when that statement was made by Mr. Cook, the defendant Carver, under the law, has a right to remain silent and make no utterances of any kind. Accordingly, the presence of Carver is not to be regarded as evidence against him and the statement has application only to the defendant Cook.

255

While this statement of the court was somewhat equivocal in its reference to the presence of Carver rather than to the confession of Cook as the thing to be disregarded as evidence against Carver, the statement in its entirety probably made the point correctly. In any event, at the close of all the evidence, the jury was properly instructed in writing that a confession "can only be considered against the person making and signing the same" and that in deliberating upon the case of one defendant, evidence admitted solely against the other defendant should not be considered. Defendant Carver now contends, however, that the admission of the Cook confession was so highly prejudicial to Carver that it requires reversal of his conviction.

The confession signed by Cook was in question and answer form. After preliminary information as to his age, marital status, residence, employment, etc., Cook stated in the document that he knew he was there in the police station because of a robbery for which he was under arrest. He was then asked if he knew anyone else in the room, and he replied that he did know Carver and another man named Slick and had been in their company that day prior to his arrest. The statement then went on:

> Detective Roney: Do you care to tell us in your own words from the beginning what happened today?
>
> Fred Cook: This morning this place was mentioned and I was told that this guy had about $1500.00 that he had won. Then I went to get it. In the process of the holdup I was captured, and put under arrest.
>
> Detective Roney: Who were you with at the time of the holdup?
>
> Fred Cook: Carver and Slick.

Then followed more details of the robbery in which Cook stated that he and Carver had "stuck the place up" and

Slick had driven the car; that the robbery had been planned at Slick's apartment and Slick had furnished Cook with the pistol; that Cook had a nickel-plated .38 revolver and Carver had a .38 police special.

From the above recital it can readily be seen that the references to Carver were not inextricably imbedded in all parts of the statement which constituted the confession. There would have been no real difficulty in tailoring the statement to delete therefrom all mention of Carver, by omitting the last part of the statement altogether, without weakening the confession as to Cook. Carver, however, contends that Cook's confession would have been inadmissible even in truncated form, and the State has joined issue on that basis.

■■ Under the most recent Illinois decisions, we believe that the trial court was correct in admitting Cook's confession. It was made in Carver's presence, its admissibility was clearly limited by the instructions to Cook alone, and Carver had made no motion for a severance at any time. People v. Tyner, 30 Ill2d 101, 105–106, 195 NE2d 675; People v. White, 28 Ill2d 23, 26, 190 NE2d 817; People v. Vickery, 321 Ill 254, 258, 151 NE 870. That Carver knew of the confession, and of the State's intention to use it, is clearly disclosed by the record in the report on Cook's pretrial motion to suppress, which had been denied after full hearing. In this circumstance, Carver's failure to ask for a severance forecloses him now from claiming prejudice resulting from a joint trial, since the court has no obligation to order a severance on its own motion. People v. Watt, 380 Ill 610, 44 NE2d 580; People v. Somerville, 71 Ill App2d 381, 219 NE2d 116.[4]

---

[4] The leading case in support of the admissibility of such a confession is Delli Paoli v. United States, 352 US 232, 239, 242, 247, 248 (1957), a five-to-four decision on essentially similar facts insofar as they relate to the admission of a codefendant's accusatory confession. Justice Burton, speaking for the court, stated the problem:

(4) Finally, defendant contends that the sentence is excessive, and asks this court to exercise its power to reduce it. Ill Rev Stats, 1963, c 38, § 121–9 (b) (4). The

> The issue here is whether, under all the circumstances, the court's instructions to the jury provided petitioner with sufficient protection so that the admission of Whitley's confession, strictly limited to use against Whitley, constituted reversible error. The determination of this issue turns on whether the instructions were sufficiently clear and whether it was reasonably possible for the jury to follow them.

The court decided that it was reasonably possible for the jury to follow the limiting instructions, saying:

> It is a basic premise of our jury system that the court states the law to the jury and the jury applies the law to the facts as the jury finds them. Unless we proceed on the basis that the jury will follow the court's instructions where those instructions are clear and the circumstances are such that the jury can reasonably be expected to follow them, the jury system makes little sense.

Further rationalization for the rule is found in People v. Buckminster, 274 Ill 435, 445, 113 NE 713. The statement there made by the court has been quoted many, many times in subsequent Illinois cases. The Buckminster statement was that the courts recognized the evil of admitting a codefendant's accusatory confession, and would do so, only "when two were being tried jointly, because there seemed no practical way of reaching a right result, under the law, as to the person who made the confession, without admitting it; that the injury to the co-defendant might be less than the evil that would arise in the enforcement of the criminal law if the confession were shut out entirely."

We wonder whether this position would be sustained in the future. More specifically, we wonder whether the ruling in Delli Paoli would survive another review of the same question by the United States Supreme Court. The dissenting opinion of Justice Frankfurter, in which he was joined by Justices Black, Douglas and Brennan, contained much of practical wisdom. He said:

> One of the most recurring of the difficulties pertains to incriminating declarations by one or more of the defendants that are not admissible against others. The dilemma is usually resolved by admitting such evidence against the declarant but

258

essence of his argument is that he thinks the trial court did not apportion the sentence to the crime of armed robbery as charged, but rather to the crime of murder which the court thought had been precluded only by the operation of chance.

The statutory penalty for armed robbery is imprisonment "for any indeterminate term with a minimum of not less than one year." Ill Rev Stats, 1963, c 38, § 18-2(b).

At the hearing in mitigation and aggravation, the court was informed of defendant's criminal record consisting of four felonies dating back to 1941 and concluding in 1958. In 1941 defendant was sentenced to 5 years for burglary in Texas. Released in 1943, he was again before the court in 1945, receiving a sentence of 5 to 10 years on another burglary conviction. Paroled in 1950, defendant in 1951 was given 5 to 10 year concurrent sentences on two charges of robbery. Finally, after release in 1958,

---

cautioning the jury against its use in determining the guilt of the others. The fact of the matter is that too often such admonition against misuse is intrinsically ineffective in that the effect of such a nonadmissible declaration cannot be wiped from the brains of the jurors. The admonition therefore becomes a futile collocation of words and fails of its purpose as a legal protection to defendants against whom such a declaration should not tell.

. . . . . .

The Government should not have the windfall of having the jury be influenced by evidence against a defendant which, as a matter of law, they should not consider but which they cannot put out of their minds.

By quoting the last part of this language in a footnote to its opinion in Jackson v. Denno, 378 US 368, 388 (decided since the most recent Illinois decision on this subject to which we have been referred), under circumstances which were different, but not much different, the United States Supreme Court has already raised a question as to the validity or life expectancy of the rule. It may well be that the whole situation here presented may be larded internally with constitutional questions not yet recognized or, at least, not fully explored.

defendant in that same year was convicted of three charges of robbery and sentenced to concurrent 4 to 8 year terms. The present conviction followed swift on the heels of defendant's release from this latter sentence. ■ Defendant's criminal history affords little comfort to his complaint that the sentence imposed was excessive. With that as a backdrop and under the facts of this case we cannot say that the trial court abused its discretion in the matter of sentencing. People v. Miller, 33 Ill2d 439, 444–445, 211 NE2d 708; People v. Heise, 35 Ill2d 214, 218–219, 220 NE2d 438.

DECISION

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER, P. J. and McCORMICK, J., concur.