In the Matter of the Estate of William A. Melody, Deceased.
People of the State of Illinois, Plaintiff-Appellee, v. Pauline Owens, Defendant-Appellant.

Gen. No. 51,027.

First District, Third Division.

September 14, 1967.

Howard T. Savage, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Ronald Butler, Assistant State's Attorney, and Edward J. Hladis, Chief of Civil Division, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

Pauline Owens was adjudged guilty of criminal contempt in the Probate Division of the Circuit Court and was sentenced to one year in jail. On appeal she contends: (1) her conduct was not contemptuous since it was not calculated to obstruct the administration of justice or impugn the dignity of the court; (2) the court erred in denying her a jury trial; (3) her conviction should be reversed because of certain irregularities and improprieties which occurred in the course of the proceeding, and (4) the sentence imposed should be reduced.

The defendant was a practical nurse and had been caring for William Melody for several years. Melody died on July 6, 1964. Two days later the defendant consulted an attorney. She told him that a petition to probate Melody's will had been filed and that she knew there was a subsequent will which could not now be found. She asked him to draw up a will to replace the lost one. He said he would check it out and requested her to contact him the next day. She did so and he told her that he did not want any part of it. Several days later the defendant telephoned the attorney to ask if he would reconsider. He repeated what he had said before but added that if she would bring $1,500 in cash to his office, he would take it. The next day she called him at home to say it was very important that he see her the following day. On that day she said that arrangements for two witnesses were already being made and they were to be paid. He refused to take the money and again said he would have nothing to do with the matter. On July 14th she went to another lawyer. She told him that Melody was deceased and that it was necessary to prepare a new will for him because the present one was not in accord with his wishes. The will was drawn up, signed with the decedent's name, witnessed by Velma Hoyle and Betty Jean Tewel, and the attorney subsequently presented it for admission to probate. At the hearing on proof of the will it was shown to

be spurious and was denied admission to probate. Contempt proceedings were initiated against the attorney and the defendant. The attorney was convicted and his conviction affirmed. People v. Bloom, 35 Ill2d 255, 220 NE2d 475 (1966).

The first issue is whether the defendant's activities constituted contempt. The gist of her argument is that her acts were irrelevant to the functioning of the court.

██ Conduct which is calculated to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity is a contempt of court. People v. Gholson, 412 Ill 294, 106 NE2d 333 (1952); People v. Bialek, 31 Ill App2d 281, 175 NE2d 278 (1961). The defendant's acts had as their purpose the admission to probate of a will which she knew was not the will of the decedent, and as part of her undertaking she helped to obtain a person who was willing to commit perjury in testifying before the Probate Court and helped coach the witness to lie convincingly. After the second attorney agreed to prepare the will he told the defendant he wanted two white witnesses to witness the will and asked if she could find them. She said no, but she could find two colored people for him. He said this would not stand up in court. The defendant then told him the telephone number of Velma Hoyle (with whom she had talked about being a witness while Melody was alive). The defendant denied knowing whether Hoyle communicated with the attorney or just what took place; however, she admitted that the attorney asked her to take the typed will to Hoyle, that she sent Hoyle some photographs of the deceased and that, in response to Hoyle's questions, she told her as much as she possibly could about Melody's apartment and the surroundings. It is obvious that the defendant suggested Hoyle as a witness who might be willing to commit perjury and that she assisted her to give false testimony.

■ The Illinois cases and cases of other jurisdictions demonstrate that the defendant's actions impinged upon the Probate Court's performance of its duties so substantially as to warrant punishment as contempt. In Beattie v. People, 33 Ill App 651 (1889), the court stated that "an attorney who procures false evidence, knowing it to be false, with the intention of deceiving the court and thus interfering with the due administration of justice, is . . . guilty of contempt of court. . . ." Likewise in Osborne v. Purdome (Mo), 244 SW2d 1005 (1951) and Grant v. State, 213 Tenn 440, 374 SW2d 391 (1964), attorneys who had encouraged witnesses to testify falsely were held in contempt. The judicial process is impeded by any person who knowingly causes false testimony to be presented, whether lawyer, party or merely someone interested in the outcome of the proceeding. Hence, there is no basis for restricting the rule of these cases to attorneys, and nonlawyers have been held in contempt for similar transgressions. In People v. Hodge, 23 Ill2d 425, 178 NE2d 354 (1961), Hodge was an "alibi witness" in a criminal proceeding. After Hodge testified, a second "alibi witness" took the stand. The testimony of the second witness differed from that of Hodge, and Hodge, sitting in the rear of the courtroom, began to direct the witness by shaking her head and gesticulating. The witness then changed her testimony to corroborate Hodge's. Hodge was held in contempt and her conviction was affirmed. The nature of her actions, the brazen attempt to influence the witness to change her testimony, was the essence of the contempt; the place of the contempt—in the presence of the court—determined only the procedure to be followed in the contempt proceeding. Sammons v. State, 181 Miss 45, 178 So 596 (1938), involved a person charged with selling intoxicating liquor to minors. Sammons sought to influence the testimony of witnesses subpoenaed to appear before the grand jury,

suggesting that they say they drank beer rather than whisky. He was convicted of contempt, and on appeal it was held that it was plainly contempt of court to attempt to interfere with the function of the court by suppressing the truth. See also State v. Havel, 120 Neb 832, 235 NE 584 (1931), where the court held that when one induces and arranges with witnesses to testify falsely and at the time of trial calls the witnesses to testify and they testify falsely, his action constitutes contempt. Defendant Owens' conduct was a contempt of court and, in accord with these cases, it was appropriate that it be punished as such.

The defendant next contends that the Probate Court erred in denying her a jury trial. She argues that the denial was error because it is only when a contempt is direct that trial by jury is not a defendant's right and because the sentence imposed was a jail term in excess of six months.

 The first part of the defendant's contention is based on the distinction between direct and indirect contempt. A direct contempt is committed in open court in the ocular presence of the judge or in any place set apart for the use of any constituent part of the court. In punishing a direct contempt the judge may act upon his personal knowledge of the facts and may impose a penalty summarily without the filing of an information or entry of a rule to show cause and without any hearing. An indirect contempt is one committed out of the presence of the court; before punishment may be ordered an information, notice, citation or rule to show cause must be served upon the alleged contemnor and he is entitled to a hearing. People v. Hagopian, 408 Ill 618, 97 NE2d 782 (1951). In People v. Bloom, supra, the court explained that the reason why trial by jury is not available in criminal contempt proceedings is "not that a contempt is comparatively petty or trivial but that a summary pro-

ceeding for punishment is essential to performance of the judicial function." Since only a direct contempt may be punished summarily, the defendant concludes that a right to jury trial exists when the contempt alleged is indirect.

■ The Supreme Court's statement of the rationale for the denial of a jury trial in contempt proceedings cannot be understood as incorporating a difference between proceedings for direct contempt and those for indirect contempt. The court stated that a summary proceeding for contempt makes interposition of a jury inexpedient, but "summary" was meant to denote the speedy and peremptory character of the proceeding and did not refer to the type of proceeding in which notice to the defendant and the hearing of testimony are dispensed with. The distinction sought to be made by the defendant was rejected in People ex rel. Stollar v. Ogilvie, 36 Ill2d 261, 222 NE2d 496 (1966). There the defendant, like the defendant in the instant case, was guilty of an indirect contempt. (The facts are set forth in People v. Stollar, 31 Ill2d 154, 201 NE2d 97 (1964).) Again speaking in terms of the exercise of summary. contempt power, the court held that there is no right to trial by jury in a criminal contempt case.

■ The second part of the defendant's argument is that she was entitled to a jury trial because the sentence imposed exceeded six months in jail. This was the precise issue in People ex rel. Stollar v. Ogilvie, supra, and the court decided it adversely to the defendant.

The third point is that certain irregularities and improprieties which occurred during the course of the proceeding require that the conviction be reversed. Three instances are alleged: (a) no order was entered that the defendant show cause why she should not be held in contempt and no petition asked that she be held in contempt; (b) promises of leniency were made to induce

the defendant to testify against herself, and (c) the defendant was subjected to cross-examination by an attorney representing neither herself nor the State and during this cross-examination her own attorney left the courtroom.

Examination of the record discloses that the allegations of the defendant are without merit: (a) A writ of attachment was issued against the defendant on petition of the State's Attorney on September 10, 1964. The writ directed that the defendant be brought before the court to show cause why she should not be held in contempt, and a copy of the petition charging the circumstances of the contempt was served with the writ. On November 18, 1964, the State's Attorney filed a petition wherein the circumstances of the contempt were alleged; the petition ended with the statement that the defendant's acts were contemptuous, thereby subjecting her to punishment for contempt. The petition adequately notified the defendant of the charge of contempt, the acts claimed to constitute the contempt and the possibility of her being punished unless she presented a defense. Moreover, a similar petition was examined by the Supreme Court in People v. Bloom, supra; the court found the defects in it were matters of form only. (b) At the close of the proceeding against the defendant her attorney told the court that she wanted to tell the truth and that as far as he knew nobody had promised her anything. The defendant took the stand and, in response to questions of the court, stated that she had heard what her attorney said, that she wished to testify and that nobody had made any promise to her. The statements in the record which—the defendant argues—intimate that she was promised special consideration for testifying, do not appear to us to do so. Moreover, the express denials by her and her attorney that her testimony was improperly elicited far outweigh the implication she professes to see in the statements.

444

(c) The contempt proceeding against the defendant began and ended on February 1, 1965, and during the hearing she was fully and ably represented by counsel. The proceeding against Bloom, the attorney who had presented the will, commenced the next day. The defendant was called as a witness for the State. For some period during her cross-examination by the lawyer for Bloom, her attorney apparently was not in court. It is this cross-examination and absence to which the defendant refers. Cross-examination of the defendant by Bloom's attorney was proper, for it was Bloom who was then the subject of the proceeding. Since the State had previously rested its case against the defendant, she was then merely a witness and it was not necessary for her attorney to be in attendance during her cross-examination.

■■■ The final point raised is that the sentence of one year in jail is excessive. In light of the circumstances shown by the evidence, the Probate Court did not abuse its discretion in imposing the sentence. The acts of the defendant were willful, deliberate and a flagrant attempt to obstruct justice.

The judgment of the Probate Division of the Circuit Court is affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.