(No. 41029.— ▮▮▮▮▮▮▮▮▮▮▮▮▮)

*In re* ESTATE OF WILLIAM A. MELODY.—(THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* PAULINE OWENS, Appellant.)

*Opinion filed May 28, 1969.*

WARD, J., took no part.

HOWARD T. SAVAGE, of Chicago, appointed by the court, for appellant.

EDWARD V. HANRAHAN, State's Attorney of Chicago, (DANIEL P. COMAN, RONALD BUTLER, and GERALD J.

MANNIX, Assistant State's Attorneys, of counsel,) for appellee.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

This court granted defendant Pauline Owens leave to appeal from the judgment of the appellate court affirming a conviction and sentence of one-year imprisonment for criminal contempt of the probate division of the circuit court of Cook County.

The issues presented are whether defendant's conduct in conspiring with lawyers and others to create a spurious will, obtaining signatures of attesting witnesses and furnishing them with knowledge that would render their false testimony plausible upon proof of the will, constituted a contempt of court; and whether defendant was entitled to a jury trial where the punishment for the alleged contempt involved imprisonment for one year.

The facts respecting defendant's conduct are admitted, and amply set forth in the appellate court opinion, (*In re Estate of Melody,* 86 Ill. App. 2d 437,) and will not be restated here. In denying that her acts were in contempt of court, defendant argues that since she did not file the will, and the attesting witnesses did not testify falsely but admitted their duplicity, her acts were irrelevant to the functioning of the court.

Contempt of court has been generally defined as conduct calculated to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute. (*People* v. *Gholson,* 412 Ill. 294, 298; *In re Estate of Kelly,* 365 Ill. 174, 178.) Clearly the filing of the spurious will in the probate division of the circuit court constituted a direct contempt of the court, (*People* v. *Bloom,* 35 Ill.2d 255, 261; *People* v. *Harrison,* 403 Ill. 320, 324; *In re Estate of Kelly,*

at 179,) even though it was not committed in the presence of the judge, but in a place set apart for the use of a constituent or integral part of the court. *In re Estate of Kelly,* at 181; *People* v. *Andalman,* 346 Ill. 149.

Although defendant did not do the actual filing of the will, it was she who was the instigator of the entire plan, which had as its purpose the admission to probate of a spurious will. Her part included not only obtaining the lawyer to draft and probate the spurious will, but obtaining and coaching persons to commit perjury as attesting witnesses before the probate division of the circuit court. (See 86 Ill. App. 2d at 440.) Her plan and role were clearly designed to obstruct the administration of justice and law, and derogate from the authority and dignity of the court. The fact that the scheme "blew up" *after* counsel offered the will for probate, when the court on motion of one of the heirs appointed an *amicus curiae* to investigate the conditions attending its execution, (see *People* v. *Bloom,* 35 Ill.2d 255, 259,) and that her part of the scheme was not committed in the physical presence of the court, did not make her conduct any less a criminal contempt of the probate division of the circuit court. Her acts, committed outside the presence of the court, could certainly be deemed indirect contempt. (*People* v. *Stollar,* 31 Ill.2d 154, 159, 160; *People* v. *Hagopian,* 408 Ill. 618, 621; *People* v. *Harrison,* 403 Ill. 320, 324.) Since such indirect contempt was admitted, it may be punished as a direct contempt. (*People* v. *Hagopian,* at 622; *People* v. *Pomeroy,* 405 Ill. 175, 180; *People* v. *Berof,* 367 Ill. 454, 456.) Consequently, there was no error in invoking the inherent power of the court to punish such contempt.

We consider next defendant's contention that she had a right to a jury trial in such contempt proceedings. At the time this cause was tried and heard on appeal, the law of this State was that a right to jury trial is not available in proceedings for criminal contempt. *People ex rel. Stollar* v.

*Ogilvie* (1966), 36 Ill.2d 261, 262; *People* v. *Bloom* (1966), 35 Ill.2d 255, 257.

In the *Stollar* case, however, cognizance was taken of the dictum of the United States Supreme Court in *United States* v. *Barnett,* 376 U.S. 681, fn. 12, 12 L. Ed. 2d 23, 84 S. Ct. 984, that some members of that court regarded punishment of contempt of court by summary trial without a jury to be constitutionally limited to that penalty provided for petty offenses. *Stollar* also noted the Supreme Court ruling (*Cheff* v. *Schnackenberg,* 384 U.S. 373, 16 L. Ed. 2d 629, 86 S. Ct. 1523) that sentences exceeding six months for criminal contempt may not be imposed by the Federal courts unless a jury trial has been received or waived.

The dictum in *Barnett* presaged the law, for in *Bloom* v. *Illinois,* 391 U.S. 194, 20 L. Ed. 2d 522, the United States Supreme Court re-examined and modified the rule respecting the right to jury trial in criminal contempt cases. The court in *Bloom* first recognized that in the *Cheff* case contempt was treated as a petty offense, and that it was not necessary to decide either in *Cheff* or in *Barnett* whether the constitutional right to a jury trial applied to a prosecution for a serious contempt, *i.e.,* whether severe punishment would itself "trigger the right to jury trial." The court then noted its ruling in *Duncan* v. *Louisiana,* 391 U.S. 145, 159, 162, 20 L. Ed. 2d 491, that where the penalty authorized by the statute involved two-years imprisonment, the crime was sufficiently serious to require a jury trial under the sixth amendment. Finding no substantial difference between serious contempts and other serious crimes, and noting the apprehensions expressed by Congress and the courts upon the unbridled power to punish summarily for contempt and its potentiality for abuse, so evident from the serious penalties imposed in convictions for criminal contempt, (*United States* v. *Barnett,* 376 U.S. 681, 751,) the court promulgated the rule that although criminal contempt is not a crime that requires a jury trial regardless of the penalty,

serious contempts necessitate jury trials. The court stated at page 198: "We accept the judgment of Barnett and Cheff that criminal contempt is a petty offense unless the punishment makes it a serious one; but in our view, dispensing with the jury in the trial of contempts subjected to severe punishment represents an unacceptable construction of the Constitution, '* * * an unconstitutional assumption of powers by the [courts] which no lapse of time or respectable array of opinion should make us hesitate to correct.' [*Citation.*]"

Applying the rule that a court must look to the penalty actually imposed when the legislature does not denote the seriousness of the offense by fixing a maximum penalty, the court in *Bloom* held that since defendant was sentenced to two-years imprisonment, he was entitled to a jury trial, and it was error to deny him that right. *Bloom* v. *Illinois,* 391 U.S. 194, 211.

Neither the *Bloom* nor the *Duncan* cases, however, adjudicated the question of whether contempt punishable by one-year imprisonment is, by virtue of that sentence, a sufficiently serious crime to require a jury trial. (*DeStefano* v. *Woods,* 392 U.S. 631, 633, 20 L. Ed. 2d 1308.) That is the issue presented here. In resolving that question we note that in *Duncan* (391 U.S. at 161) the United States Supreme Court commented that under Federal law petty offenses, for which no jury trial is required, are limited to those involving no more than six-months sentences; and that in only two States is the right to jury trial denied for crimes punishable for longer than six months. Under those guidelines the one-year imprisonment imposed on defendant Owens rendered this criminal contempt a serious offense, requiring a jury trial under the mandate of recent decisions of the United States Supreme Court. *Bloom* v. *Illinois,* 391 U.S. 194; *Duncan* v. *Louisiana,* 391 U.S. 145; *Cheff* v. *Schnackenberg,* 384 U.S. 373; *United States* v. *Barnett,* 376 U.S. 681.

We are cognizant, however, that the United States

Supreme Court in the *DeStefano* case gave prospective operation to the rule requiring jury trial for serious contempts, and held that the rule did not apply to trials begun prior to May 20, 1968—the date of the *Bloom* and *Duncan* cases. In *DeStefano* the court stated: "We hold, however, that Duncan v. Louisiana and Bloom v. Illinois should receive only prospective application. * * * the adverse effects on the administration of justice of invalidating all serious contempt convictions would likely be substantial." 20 L. Ed. 2d at 1311, 1312, 88 S. Ct. at 2095, 2096.

It is evident that the purport of the prospective operation ruling was to obviate a possible "raid" on the judicial system by persons convicted of serious contempts who had not been accorded jury trials. That decision was not intended to require differentiation between defendants involved in the same criminal contempt. Nor does it require this court to apply the rule in *Bloom* only prospectively, or preclude us from invoking that rule where defendant's trial was virtually intermingled with that of the defendant in *Bloom* v. *Illinois*. The contempts both arose out of one concerted plan, instigated by defendant Pauline Owens to probate a spurious will. But for the speed with which Bloom perfected his various appeals, and the speed with which the courts ruled thereon, defendant Owens might have been the first to reach the United States Supreme Court. It would be inherently unjust to confer greater constitutional rights on Bloom merely because of the fortuitous circumstances that he perfected his appeal to the United States Supreme Court first.

We hold, therefore, that the denial of a jury trial here constituted reversible error, and the judgment is hereby reversed and the cause remanded for a new trial, in which defendant Owens is properly entitled to a jury.

*Reversed and remanded, with directions.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.