(No. 37395.—

The People of the State of Illinois, Defendant in Error; *vs.* Thomas Wright, Plaintiff in Error.

*Opinion filed March 25, 1963.—Rehearing denied May 29, 1963.*

DAVID I. HOFFMAN, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and EDWARD J. HLADIS and JOSEPH V. RODDY, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

The defendant, Thomas Wright, and one Robert Bueno were tried jointly without a jury in the criminal court of Cook County, were convicted of unlawfully selling narcotic drugs, and defendant was sentenced to 10 to 12 years imprisonment. This writ of error is prosecuted by Wright alone.

The defendant admits that he sold narcotics but contends that he was entrapped into making the sale. Entrapment is the conception and planning of an offense by an officer or other person and his procurement of its commission by one who would not have perpetrated it except for the trickery, fraud, or persuasion of the entrapper. (*People v. Outten,* 13 Ill.2d 21.) However, the defense of entrapment is not available to a person who has the intent and design to commit a criminal offense, merely because an officer, for the purpose of securing evidence, affords the person the opportunity to commit the criminal act, or purposely aids and encourages him in its perpetration. (*People v. McSmith,* 23 Ill.2d 87.) We shall examine the evidence in this case in the light of these principles.

Because of the nature of the defense and the fact that the sale is admitted, evidence of the events leading up to the sale, rather than evidence of the sale itself, is of pri-

mary importance. The principal witness for the State was a police officer, Eugene Nicoletti. He testified that on November 27, 1959, he was introduced to Wright by a man known as Johnny. Nicoletti told the defendant that he wanted to buy some "stuff", and he and Wright talked for about 10 or 15 minutes in a restaurant and then went to a tavern where the defendant asked the officer how much he wanted. Nicoletti stated that he wanted a "nickel deck" and when the defendant said he didn't like to fool around with such a small amount, the officer told him that, if the stuff was good, he would be back to get more. Nicoletti then gave Wright some money and the defendant left the tavern and returned in 10 or 15 minutes and told the officer that he had the stuff. The two men then left the tavern and the defendant handed Nicoletti a package which later proved to contain a substance other than narcotics. Nicoletti testified that in his conversation with the defendant on this occasion he claimed to be a drug addict but denied that he had said that he was sick. He testified that the defendant never told him that he didn't deal in narcotics and never told him that he couldn't sell him any narcotics.

Nicoletti further testified that on December 10 he again met the defendant in the same restaurant and complained about the fact that Wright had sold him "turkey". Wright told him that he was afraid that Nicoletti was a Federal agent and had to find out who he was, assuring him that this time he would get him the good stuff and they agreed upon a price. Nicoletti gave him some money, the serial numbers of which had been recorded, and the two men left the restaurant. They proceeded down the street on opposite sides of the street and the defendant went in and out of a pool room and two taverns. Finally, Wright crossed the street to meet the officer and the two men went into a pool hall and went out the side door. As they walked down the street after leaving the pool hall, the defendant handed Nicoletti a package which was later proved to contain nar-

cotics. Wright was placed under arrest by Nicoletti and his partner, who had been observing these events, and following his arrest the defendant gave the officers a description of the man who had furnished the narcotics. Other officers searched the area and arrested Bueno, who had the recorded money in his possession.

Wright's version of these events is somewhat different. He testified that on November 27, Johnny and Nicoletti approached him in the restaurant and Johnny said that Nicoletti wanted to buy some stuff. The defendant asked Johnny why he had come to him and Johnny said that Nicoletti was an old army buddy of his who was sick and needed narcotics. Wright testified that he told Johnny and Nicoletti that he didn't sell narcotics and couldn't get any. The three men then left the restaurant and went to a tavern where Johnny kept trying to persuade the defendant to sell Nicoletti some narcotics. Nicoletti joined in the conversation and told the defendant that he was sick and had to have some drugs. Johnny took the defendant aside and told him that Nicoletti had some money and they might as well sell him something so they would have some money in their pockets. Wright then told Nicoletti that the price was $7, following which he left the tavern and went to a hotel down the street where he bought a package of Bromo Seltzer. He took the label off the package and wrapped the contents in tinfoil and returned to the tavern where he gave the package to the defendant and picked up $7 which was on the bar.

The defendant testified that he next saw Nicoletti in the restaurant on December 10, at which time Nicoletti complained about the dirty trick that had been played on him. The defendant told Nicoletti that he didn't have any money so he couldn't give him his money back, and Nicoletti then asked if he could get some stuff and Wright told him that he didn't sell it and asked Nicoletti why he kept coming to him. Nicoletti replied that he knew the defendant was

an addict and knew that he could obtain narcotics. According to the defendant, Nicoletti again told him that he was sick and needed narcotics. They left the restaurant and walked down the street where the defendant saw a police car and told Nicoletti that he wanted to go back to the restaurant. The police car drove away, however, and the two men walked on down the street and went into another restaurant where they talked for about 20 minutes. Nicoletti mentioned some names of people he knew around the neighborhood and told the defendant that he had been raised in that vicinity. Wright testified that he believed Nicoletti's story and felt sorry for him, because he had been in the same shape himself. Nicoletti asked again if he would sell him some narcotics and told the defendant that this time he was going with him to be sure that the defendant wouldn't run off with the money. The defendant told Nicoletti that he couldn't go with him but that he could walk on the other side of the street. They then left the restaurant and Nicoletti gave the defendant some money, following which they pursued the devious path through the neighborhood to which we have previously referred, and finally the defendant handed the narcotics to Nicoletti.

In support of his contention that he was entrapped, the defendant relies primarily upon *Sherman* v. *United States,* 356 U.S. 369, 2 L. ed. 2d 848, and *People* v. *Strong,* 21 Ill.2d 320. In *Sherman,* a government informer and the defendant were each being treated to be cured of narcotics addiction. The informer told the defendant that he was not responding to treatment and asked the defendant to supply him with narcotics. The defendant first refused but after a number of repetitions of this request, the defendant, presumably out of sympathy with the informer's supposed suffering, obtained some narcotics which he shared with the informer after obtaining money from the informer to reimburse him for the cost of the drugs. The Supreme Court held that this course of action constituted entrapment and

emphasized that the defendant was attempting to stop the use of narcotics and that the informer not only induced the defendant to make a sale he did not want to make but also enticed the defendant to resume the habit.

The defendant claims that the present case is controlled by *Sherman*. He argues that the evidence shows that he didn't want to sell any narcotics and that he tried to get rid of Nicoletti by selling him Bromo Seltzer the first time. He claims that he finally sold the drug only because of Nicoletti's persistent demands and because he sympathized with Nicoletti's supposed suffering. This argument is predicated entirely upon the defendant's own testimony and completely ignores Nicoletti's testimony that he never told the defendant he was sick. Nicoletti testified that the defendant explained the first sale by saying he had to be sure that Nicoletti was not a Federal agent. When all of the evidence is considered, it is apparent that the facts here are far different from those in *Sherman,* where the undisputed facts made out a case of entrapment. Furthermore, the defendant here was an addict at the time of these events and the element of inducing him to resume his habit, which was present in *Sherman,* is lacking here.

In *People* v. *Strong*, the other case relied upon by the defendant, the decisive element in our determination that the defendant was entrapped was the fact that the government itself supplied the narcotics which the defendant sold. The narcotics here were not furnished by the State and *Strong* is not in point.

The defendant argues that the State should have produced the man known as Johnny, since he was present during the several conversations between Nicoletti and the defendant. There is no requirement that the State call all available witnesses. (*People* v. *Aldrich,* 19 Ill.2d 176, 180.) From all that appears in the record, Johnny was available to the defendant as a witness. In *People* v. *Wilson,* 24 Ill.2d 425, cited by the defendant, it was established that

the Federal government had sent the informer out of the State so that she would not be available. There is no such evidence here.

A consideration of all of the evidence in this case leads us to the conclusion that the defendant was not entrapped. His conduct was merely that of a wary seller of narcotics who exhibited only the natural caution and hesitancy of one engaged in that illegal traffic rather than that of an innocent person who was enticed into committing a crime he would not have otherwise committed. Since the issue of entrapment is the only question raised on this writ of error, the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*