THE PEOPLE *ex rel.* HONORABLE ALFRED E. WOODWARD, Plaintiff-Appellee, *v.* FRANK W. OLIVER, Defendant-Appellant.

(No. 73-88; ▮▮▮▮▮▮▮▮)

Second District (1st Division)—January 20, 1975.

Melvin B. Lewis, of Chicago, for appellant.

John J. Bowman, State's Attorney, of Wheaton (James W. Jerz, of Illinois State's Attorneys Association, of counsel), for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

This is an appeal from a judgment finding defense attorney Frank Oliver guilty of contempt during a criminal trial and fining him $350. Briefly stated, the specifications of contempt are: (1) that, in the presence of the jury, he refused to enter chambers when requested to do so by the court; and (2) that, during closing argument, he repeatedly referred to the trial judge's rulings after the court had warned him that such comments would be regarded as contemptuous. The issues presented for review are: (1) whether the right of the defendant in the case-in-chief to a public trial justifies his counsel's refusal to enter into an *in camera* discussion; (2) whether the contempt order is void for lack of specificity; (3) whether the statements made by Oliver during the course of his closing argument violated the court's admonition to refrain from comment on the court's rulings; and (4), assuming that Oliver did violate the court's admonition in respect to his closing argument, whether such comments constitute contempt if there was no material disruption of the court proceedings.

After reviewing the record, we affirm the trial court.

The conduct upon which the citation for contempt is based occurred during the criminal trial of one Michael Seymour for unlawful possession and delivery of cannabis sativa, in which Oliver represented the defendant. On December 13, 1972, after the State had rested its case, Oliver delivered his opening statement, which had been deferred until that time. In the course of this statement, Oliver told the jury that his client would testify to his intention or state of mind at the time of the alleged transaction and would testify that he was then cognizant of the agents' identity and was merely aiding them in the apprehension of the primary marijuana dealer. The State objected to the admissibility of the defendant's testimony concerning his intention or state of mind. The court

ruled that the defendant could not directly testify as to his intention and that the intention of the defendant was a conclusion to be drawn by the jury from the facts. Thus, the court held that statements concerning the defendant's intent made during the opening statement were improper since such direct testimony would not be admissible. At that point, Mr. Oliver stated that since the defendant was precluded from testifying to his intent in the transaction, the defense elected to rest its case. An *in camera* discussion, which was not transcribed, was held, and the jury was excused for the day.

■■ It appears from the record that the next acts sequentially were the closing arguments of State and defense. The main thrust of Oliver's argument to the jury was that intent was a crucial element in this offense, and he urged the jury to infer from the facts that the defendant did not possess the requisite criminal intent necessary to a finding of guilty, but rather that the defendant, cognizant of the agents' identity, had merely attempted to aid them in the arrest of the dealer in marijuana. It should be noted that the trial court had *not* ruled that intent was not an element of the crime. Rather, the trial court's ruling only precluded direct testimony of the defendant as to his intent, or state of mind, and, indeed, permitted the jury to infer the defendant's intent from any facts in evidence. Thus, in arguing defendant's lack of criminal intent from the facts in evidence, Oliver was merely urging the jury to draw an inference of innocent intent. This argument was well within the bounds of advocacy during closing argumentation. After Mr. Oliver had argued what he believed was the reasonable inference of intent from the facts in evidence, the following occurred during his closing argument to the jury:

"MR. OLIVER: Now, in that connection, you may recall that a couple of days ago I started to make an opening statement preparatory to putting on proof of the defendant's case, and when I got to the point of telling you that Mike Seymour would get on the stand and tell you how he interpreted what was going on and what his intent was, —

THE COURT: Counsel, I think we had better go into chambers.

MR. OLIVER: I don't want to go into chambers, Judge.

THE COURT: Let's go into chambers right now.

MR. OLIVER: No, I am not going to go into chambers. This is a public trial and I am going to have a public trial.

THE COURT: Bring the attorney in, Mr. Bailiff.

MR. OLIVER: I will not go into chambers unless I am—are you going to do it by force? You will have to do it by force, sir. Make your arrest. I am not going to do it. I am not going to do it.

I am not going to go into chambers, under no circumstances.

THE COURT: All right, the jury will go into the jury room right at this time.

(The jury retired to the jury room, after which the following proceedings were had in open court, outside the hearing and presence of the jury:)

THE COURT: Mr. Oliver, you are aware of the fact that the Court has made certain rulings in this case and you are now taking up with the jury rulings that the Court has made, which is none of their business. The instructions so state it, and I am warning you at this time, if you comment in respect to any rulings the Court has made in this matter, which is not appropriate for the jury to hear, and they are to hear the evidence, in that event, you are going to be found in contempt by this Court. Now, you may proceed with your argument.

MR. OLIVER: I have stated, your Honor, what took place in the presence of the jury.

THE COURT: I am just warning you—

MR. OLIVER: And they observed me rest and I propose to remind them that they saw me rest.

THE COURT: I am just warning you at this time that you are not to comment to the jury in respect to any of the rulings that this Court made."

After this episode, Mr. Oliver continued to argue the defendant's lack of criminal intent. Without republication of the remainder of Mr. Oliver's closing argument, the following excerpts are pertinent to the second specification of contempt.

"Mr. OLIVER: Now, this is a fair evaluation of what took place, rather than this inference that they are trying to create that the arrangement all the time was with Mike Seymour.

And you see, that is why he objected when I wanted to go into the Lisle Bowl thing. Wanted to keep the evidence out. Didn't want you to hear it.

MR. KILANDER: Your Honor, I have got to object to comments of why objections are made.

THE COURT: Sustained. Counsel has a right to make objections and this is not proper argument before the jury, and I instruct you to cease that type of argument, Mr. Oliver.

MR. OLIVER: As I say, we don't have any direct evidence of intent here, which might sound something like 'I understood they were policemen; I observed they were policemen; I want to help them. I couldn't talk to them easily, but I felt they understood.

I couldn't talk to them because there were people around that they were trying to catch.'

And you know, it is funny, because these kinds of explanations are the kind that we sort of accept in everyday life."

At this point, Mr. Oliver related to the jury two allegorical situations. One concerned a child who had taken a piece of forbidden candy. He concluded this story by stating:

"In everyday life we let them tell us what their intentions are, and then we weigh those intentions or their account of their intentions against inferences that we may draw from facts. That is the way we operate in everyday life."

The second allegory concerned a man with a gun who observed his worst enemy being pursued by a lion. The man with the gun fired it, killing the one who had been his worst enemy. The conclusion of this allegory was followed by the following statement:

"Now, you see, in everyday life we would expect a fellow who is asked about that or charged with it to be able to stand up in front of 12 people or 50 people or a thousand persons or one person or his God and to say, 'I really didn't intend to hit the man. I don't care if he was my enemy. I intended to hit the lion.' I wish I might have provided you with that direct evidence of intention, and believe me, when I suggested that I would do so, I did not intentionally suggest something that I thought to be improper, because in my mistaken way, for 20 years now, I have thought, always thought, that that was the very best evidence of intention in a courtroom, what a man said was in his head."

Later, Mr. Oliver stated to the jury:

"I don't think in any event we would be chargeable with absence of evidence.

Number one, the law doesn't require us to put in evidence. *Number two, the State objected to the evidence I did want to put in which might have—*

THE COURT: Counsel, that is improper comment and you are to cease and desist. I have warned you before."

Subsequently, the jury returned a verdict of guilty. After the conclusion of the trial, the court proceeded as follows:

"THE COURT: Now, that completes this.

Mr. Oliver, I would like to cite you for contempt for your refusal to accompany the bailiff to chambers as I requested.

You made it necessary for me to excuse the jury and send them into the jury room in order that we could discuss something that the Court felt was necessary.

> Further, in your final argument you repeatedly made reference to matters that the Court sustained objections to.
>
> Now, defendants are entitled to every right that they have in the book.
>
> But also if the State makes a mistake, why the defendant gets a new trial.
>
> If the defendant's counsel takes advantage of the situation and goes beyond the rules, the only thing it seems to me we have to do is cite you for contempt."

The court stated that it had waited until the conclusion of the trial to cite Oliver in order to avoid delaying the proceedings. A summary hearing on the contempt citation was then held wherein Oliver was given the opportunity to and did argue that his actions and statements were not contemptuous. At the conclusion of this hearing, the court found him guilty of contempt and fined him $250 on the first specification of contempt and $100 on the second specification.

The contempt order, insofar as this appeal is concerned, *inter alia*, recited:

> "4. That on December 15, 1972, during the closing argument being made in behalf of the said MICHAEL SEYMOUR, the defendant, FRANK OLIVER, was requested by the Court to retire to Chambers for the purpose of discussing an objection that had been made and ruled upon by the Court; that the defendant, FRANK OLIVER, refused to accompany the Court into Chambers when requested, he then refused to accompany the Bailiff into Chambers as directed by the Court, and by reason of the foregoing the Court might confer with counsel pertaining to the objection then pending before the Court.
>
> 5. That later in said proceedings on the same date and during the final argument, the defendant, FRANK OLIVER, made repeated reference to matters excluded upon objection and not in evidence, being the intent of the defendant at the time of the offense; further, after being admonished in this regard by the Court, he continued to comment in the presence of the jury upon the rulings made by the Court on said objections.
>
> 6. That the conduct of the defendant, FRANK OLIVER, which took place in front of this Court while in open session and in the presence of the jury, tended to impede and interrupt the proceedings and lessen the dignity of this Court."

Subsequently, Oliver moved to vacate the findings and fines and, when that was denied, this appeal was taken.

■■ Contempt has been defined as "acts * * * which are 'calculated

to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute'." (*In re Estate of Melody* (1969), 42 Ill.2d 451, 452, 248 N.E.2d 104, 105; *People v. Miller* (1972), 51 Ill.2d 76, 78, 281 N.E.2d 292, 293.) This court is mindful that the contempt power is an extraordinary power of the court, and as such, should be exercised only in extreme situations. The court recognizes both the duty of an attorney as an advocate of his client's cause and the duty of the trial judge as a fair and impartial administrator of justice. Although these duties are not inherently opposed to one another, often the two conflict. To avoid such conflicts between bench and bar, a balance must be struck between the role of the lawyer and the role of the trial judge.

Having briefly summarized the nature of the contempt power, we now consider the more specific issues presented for review with regard to the first specification of contempt. Oliver contends that he was justified in refusing to enter chambers based on his client's right to a public trial. He further contends that the court had been made aware of his client's desire to curtail *in camera* discussions, and that in light of this, the court should have excused the jury in lieu of holding an *in camera* discussion.

■■ That the defendant is entitled to a public trial is an uncontroverted constitutional mandate. However, we doubt that, in this case, the right to a public trial would have been infringed by an *in camera* discussion. It has been stated that "[t]he right to a public trial is violated only by a blanket exclusion of members of the public." (*People v. Dronso* (1967), 83 Ill.App.2d 59, 70, 226 N.E.2d 460, 466.) Moreover, the court has recognized the propriety of holding *in camera* discussions when ruling upon objections.

> "It is common practice in trials for a court to hold a conference in chambers to determine whether or not an objection should be sustained. Afterwards, when the trial is resumed, the court rules in the presence of the jury that the objection is sustained. We find no prejudice in this procedure." *People v. Jackson* (1968), 98 Ill.App.2d 97, 98, 240 N.E.2d 364, 365.

■■ In the case at bar, there appear from the record to have been numerous *in camera* discussions, to which Oliver did not object. Indeed, in the record before us, one of these discussions had been conducted without the presence of a court reporter. In every jury trial, there are numerous side-bar and in-chambers discussions. Mr. Oliver, an experienced attorney, is certainly familiar with the propriety of these discussions. It is the duty of the trial judge in a jury trial to protect the jurors from prejudice, and it is for this reason that side-bars and in chambers

discussions are held. The trial judge, as administrator of a fair and impartial trial, was under a duty to conduct an *in camera* discussion to safeguard the jury from undue prejudice.

Indeed, the purpose of the judge in ordering the discussion out of the presence of the jury was to warn Oliver that further statements to the jury regarding the propriety of the court's rulings would be regarded as contemptuous. To have warned Oliver of this in the jury's presence might have placed him in an unfavorable light and prejudiced the jury against his client. Thus, Judge Woodward's request for the *in camera* discussion to warn Oliver certainly was not for the purpose of depriving the defendant in that case of a public trial, but rather to insure that Oliver would not be placed in an unfavorable and prejudicial light in representing his client.

■■  Oliver contends in this court that the trial judge had been informed of defendant Seymour's "distress at the frequency with which proceedings had been conducted in chambers," and that therefore, the trial court should have excused the jury rather than order an in chambers discussion. Although this is alluded to in the post-trial portions of the transcript, there is nothing in the record before us indicating that Judge Woodward had such knowledge at the time the incident occurred. Even if we assume that the trial judge had knowledge of Seymour's offended sensitivities to *in camera* discussions, we find defendant-contemnor's argument to be without merit. Again, it is the duty of the trial judge to direct the course of the trial and administer justice fairly and impartially. It was the responsibility of Mr. Oliver to educate his client to the purposes of side-bar and in-chambers discussions. The failure of Oliver so to illuminate his client or the particular sensitivities of his client cannot be asserted as an attempt to shift the responsibility for the incident to the trial judge.

■■  With respect to the first specification of contempt, we find that there was an obstruction of justice. Defendant urges us to reverse this citation on the basis of the similarity between the case at bar and *In re McConnell* (1962), 370 U.S. 230, 8 L.Ed.2d 434, 82 S.Ct. 1288, wherein counsel was found not to be contemptuous in stating that he would continue his line of questioning "until some bailiff stops us." However, the cases must be viewed in the respective factual situations. In *McConnell*, the attorney's remark, although threatening and insulting to the judge who had ordered that a particular line of questioning cease, did not result in an actual obstruction of justice. There, after a brief in-chambers discussion, the trial proceeded. Here, on the contrary, we are confronted with a situation in which the trial judge had ordered Oliver into his chambers and had already left the bench in expectation

that his request would be heeded. Oliver's refusal to accompany the judge compelled the judge to return to the bench and to excuse the jury in order to avoid a physical altercation between the bailiff and Oliver. In this case, there was a confrontation and a disruption in the proceedings, directly caused by Oliver's conduct. The judge was, after and by this confrontation, forced to accede to the demands of Oliver by returning to the bench. That the authority of the court was diminished and brought into disrepute by Oliver's behavior, which occurred in the presence of the jury, cannot be denied. We are of the opinion that the case at bar differs from *In re McConnell* when viewed in its factual setting. We must and do conclude that Oliver's conduct was calculated to and did embarrass, hinder and obstruct the court in its administration of justice.

With respect to the second specification of contempt, defendant contends that the order lacks specificity as to what statements of the defendant violated the court's admonition to refrain from comment on the trial court's rulings. Defendant further argues that, assuming the defendant did violate this admonition, no actual and material disruption of the proceedings occurred.

■■■ It is not disputed that there must be a written order entered by the trial court and that such order must set forth the grounds upon which the contempt citation is based. This written order must contain not merely the opinions or conclusions of the trial judge, but rather the facts. (*People v. Miller* (1970), 130 Ill.App.2d 637, 645, 265 N.E.2d 175, *rev'd on other grounds* (1972), 51 Ill.2d 76, 281 N.E.2d 292.) Moreover, it has been held that no part of the essential facts can be supplied by presumptions or inferences. (*People v. Loughran* (1954), 2 Ill.2d 258, 118 N.E.2d 310; *People v. Koniecki* (1961), 28 Ill.App.2d 483, 487, 171 N.E.2d 666.) Defendant contends that *People v. Miller* (1970), 130 Ill. App.2d 637, 645, 265 N.E.2d 175, *rev'd on other grounds* (1972), 51 Ill. 2d 76, 281 N.E.2d 292) stands for the proposition that either the order *or* the record must identify with precision the basis for the contempt ruling. We disagree with defendant's argument as to the meaning of *Miller*. While the order must be factual and specific in nature, this court is not prevented from reviewing the record on appeal *together with the order*. Indeed, it has been held that specific facts constituting the basis of a direct contempt may be incorporated by reference, if not set forth in the order itself. (*People v. Tavernier* (1943), 384 Ill. 388, as cited in *People v. Baxter* (1972), 50 Ill.2d 286, 289, 278 N.E.2d 777; *In re Magnes* (1972), 8 Ill.App.3d 249, 254, 290 N.E.2d 378.) Although it is preferable to set forth the facts with specificity in the order itself, the court upon review will consider the record to determine the correctness of the

contempt order. *People v. Baxter* (1972), 50 Ill.2d 286, 289, 278 N.E.2d 777.

■■ After examining the order, we find that it does set forth the factual basis of the contempt with sufficient specificity in light of the record. Although it might have been preferable for the order to contain with verbatim precision from the transcript the statements constituting "repeated reference to matters excluded upon objection and not in evidence" (Order, par. 5), we do not find the order void. In our statement of the facts, we have quoted extensively from the transcript those portions of the record which demonstrate Oliver's repeated reference to matters not in evidence. The record substantiates the court's finding of fact as set forth in the order of contempt. We find that the order contains facts rather than conclusions or opinions of the trial judge, and that this court may look to the record to determine if a finding of fact (that Oliver made "repeated reference to matters excluded upon objection and not in evidence") is substantiated. The order contains the finding of fact; the record contains the evidence supporting the finding of fact.

Having reviewed the record, we hold that Oliver's statements, as reflected above, did violate the court's admonition to refrain from comment on the court's rulings.

■■ The final issue concerning the second specification of contempt is whether the element of an actual disruption of the proceedings is essential to a finding of contempt. Oliver's position is that the finding based on the second specification should be reversed because there was no actual and material disruption of the court proceedings. Defendant would require pandemonium, chaos, confusion, or delay in the proceedings before the court is justified in invoking its contempt power. As we have noted previously, the contempt power should be exercised with caution and all due regard for the role of the attorney as an advocate. In the heat of a trial, particularly in closing argument, it may be difficult to strike a balance between the role of the judge as an administrator of fair and impartial justice and the role of the attorney as an advocate. This court recognizes that liberality should guide the judge. However, it is also the duty of the trial judge to set limitations on argument in order to ensure orderly, expeditious, and fair trial proceedings. (*In re Magnes* (1972), 8 Ill.App.3d 249, 254, 290 N.E.2d 378.) Indeed, even the Federal courts, which apparently consider actual and material obstruction of the proceeding an essential element of contempt, have stated:

> "[T]his is not to say that attorneys may press their positions beyond the court's insistent direction to desist. On the contrary, the necessity for orderly administration of justice compels the view that the

judge must have the power to set limits on argument. We simply encourage judges to exercise tolerance in determining those limits and to distinguish carefully between hesitating, begrudging obedience and open defiance." *In re Dellinger* (7th Cir. 1972), 41 F.2d 389, 399.

In the case at bar, the record establishes that the trial judge did set limits on the closing argument by warning Oliver not to comment further on the rulings of the court. Such a limitation is proper, since the wisdom of our rules of evidence and the correctness of the judge's rulings with respect to them are not matters for the consideration of the jury, but rather are matters of law solely for the court, which one may challenge only on appeal. Hence, the limitation imposed upon closing argumentation was proper and was one of which Oliver had foreknowledge.

■■■ We realize that some Federal courts' position on this matter differs from ours ( *United States v. Oliver* (7th Cir. 1972), 470 F.2d 10), but we conclude that when a limitation has been imposed upon the closing argument (as not within the province of the jury) and counsel has been specifically informed by the judge that further comment on such matters will be viewed as contemptuous, the contempt power can and should be exercised by the court. (See *In re Magnes* (1972), 8 Ill.App. 3d 249, 290 N.E.2d .378.) The orderly and impartial administration of justice requires the reasonable use of the contempt power, not only to ensure the defendant a fair trial, but also to ensure that the "interest of the public * * * shall not be thwarted." (A.B.A. Standards; Function of the Trial Judge § 7.1 (1972).) If the State transgresses the limits imposed upon closing argument, the defendant may be entitled to a new trial and, in some instances, to reversal. No element of actual and material obstruction is required in such situations. If the defense transgresses the limits imposed upon closing argument, there is no corresponding remedy available to the State. Thus, the duty of the trial court to provide a fair and impartial trial both to defendant and to the public would be thwarted without the possible exercise of the contempt power. We conclude and hold that the citation of Oliver for contempt in the case at bar was a proper exercise of the trial judge's contempt power.

Affirmed.

SEIDENFELD, P. J., and GUILD, J., concur.