THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ARTHUR A. ROBERTS *et al.*, Defendants.—(CYRUS YONAN, JR., Contemnor-Appellant.)

Fourth District   No. 13303

Opinion filed October 21, 1976.

O'Malley and Royce, of Chicago, for appellant.

Roger W. Thompson, State's Attorney, of Lincoln (G. Michael Prall and Robert C. Perry, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Contemnor, Cyrus Yonan, Jr., an attorney, while representing two clients on trial on criminal charges in the circuit court of Logan County, was found to be in direct criminal contempt of court on four separate occasions. At the times of making the findings of contempt, the trial judge imposed fines of $250, $50, $100 and $100, respectively. After trial, a motion to vacate the findings of contempt was allowed as to the finding giving rise to the $250 fine, but denied as to the other three findings. Subsequently, the trial judge filed a written order which described the conduct of contemnor upon which he relied in making his findings. Contemnor appeals.

All findings of contempt were made on the fourth day of trial and after contemnor had been warned about interrupting both the judge and the prosecutor and about continuing to argue with the court after a ruling had been made. The first finding, later vacated, was made when contemnor, on direct examination, asked one of his clients if the prosecution had offered her immunity. The second occurred when, while the prosecutor was arguing an objection out of the presence of the jury, contemnor twice expelled air from his lungs in a "loud" manner. The third occurred when, after the court overruled an objection to a question asked of his client by the prosecutor, contemnor slapped the table and shouted, "How come everything he [the prosecutor] does is all right and everything I do is wrong?" The final incident arose when contemnor was attempting to lay a foundation for introduction of evidence that one of his clients was a former auxiliary police officer. When contemnor sought to have a certificate to this effect marked for identification, the prosecutor approached the bench to object. Contemnor then whirled from the bench toward the jury and loudly stated, "Oh, I will withdraw it." In subsequent discussion, out of the presence of the jury, contemnor admitted that his only reason for offering evidence of his client's prior service was that he had said in opening statement that the client had been an auxiliary

policeman and that he thought that the prosecutor might have commented, in closing argument, adversely upon the client if no proof was offered to support the statement.

■■ Contemnor contends that the trial judge should have recused himself and obtained a different judge to rule upon the issue of contempt. Ordinarily, where, as here, the purported contempt occurs in the presence of the trial judge, summary action by that judge in ruling on whether contempt has occurred and determining punishment for any contempt found is a proper procedure. (*People v. Loughran* (1954), 2 Ill. 2d 258, 118 N.E.2d 310.) In *Mayberry v. Pennsylvania* (1971), 400 U.S. 455, 27 L. Ed. 2d 532, 91 S. Ct. 499, however, a defendant, appearing *pro se*, made slanderous verbal attacks on the trial judge throughout the trial. The trial judge waited until the trial was concluded and then found the defendant in contempt and imposed punishment. On review, the United States Supreme Court ruled that the judge should have recused himself and obtained a judge not stung by the·defendant's conduct.

Contemnor argues that similar action should have been taken here. Although the trial judge had become very annoyed by contemnor, no slanderous verbal attack had been made by contemnor upon the judge. Moreover, the *Mayberry* opinion specifically stated that its ruling was applicable only to cases where the trial judge had not ruled summarily upon the contempt. Thus, under the circumstances of the instant case, the trial judge was not required to recuse himself.

A closer question is presented by contemnor's contention that his conduct was not contemptuous. The Supreme Court most recently passed upon the question of when conduct of counsel in the course of trial constitutes contempt in *People v. Miller* (1972), 51 Ill. 2d 76, 79, 281 N.E.2d 292, 294. There, "sarcastic," "overzealous" statements of defense counsel unaccompanied by any other improper acts were held to be insufficient to constitute contempt. The court characterized the statements as "a good faith attempt" on the counsel's part "to represent his clients without hindering the court's functions or dignity." The court also stated:

> "Acts which constitute direct contempt of court are those which are 'calculated to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute.' (*In re Estate of Melody* (1969), 42 Ill. 2d 451, 452.)" 51 Ill. 2d 76, 78, 281 N.E.2d 292, 293.

The United States Supreme Court has upset a State court conviction of direct criminal contempt resulting from an incident where a *pro se* defendant, in open court stated that "the court was biased and had prejudged the case" and that defendant "was a political prisoner." (*In re*

*Little* (1972), 404 U.S. 553, 554, 30 L. Ed. 2d 708, 710, 92 S. Ct. 659, 660.) The court noted that the contemnor did not speak in a boisterous tone and did not disrupt the court. In *People v. Pearson* (1968), 98 Ill. App. 2d 203, 240 N.E.2d 337, where counsel was provoked by the court's comments and rulings, the statement made by counsel to the court, "I think your bias is showing," was held to not constitute contempt. In *People v. Alswang* (1973), 16 Ill. App. 3d 702, 703, 306 N.E.2d 544, 548, a disparaging in-chambers statement of one counsel to his opponent was also ruled to be not contemptuous. The court noted the "broad leeway" given in Illinois to statements of counsel made in the heat of trial. We make no reference to cases originating in the Federal courts because those cases involve the limited contempt powers conferred by Federal statute. See *In re McConnell* (1962), 370 U.S. 230, 8 L. Ed. 2d 434, 82 S. Ct. 1288.

■■ The foregoing cases set forth a policy that, in order to enable counsel to fully represent clients, protects counsel in their *use of words* even though the language may be insulting to the court or opposing counsel. In sanctioning the *use of words*, the court must act with great forbearance. *In re Little* draws a distinction between merely uttering a statement and doing so in a loud and boisterous manner. The cases do not indicate that the court must use such great restraint in punishing counsel for conduct other than speech or for conduct that is more than speech.

■■ When contemnor loudly expelled air from his lungs and when he slapped the table and shouted, "How come everything he does is right and everything I do is wrong?" he was doing more than merely making a statement. Each constituted loud and boisterous conduct. The expellation of air was made while the prosecutor had the floor to argue and after the court had admonished contemnor not to interrupt his opponent under these conditions. By each act, the court was to some extent obstructed in its administration of justice. Because these acts occurred after contemnor had engaged in previous misconduct and been admonished, his continuation of improper activity derogated from the authority and dignity of the court. Given this combination of circumstances, the trial court properly found that these two episodes each constituted contempt.

The order finding contemnor in contempt clearly sets forth the conduct upon which the foregoing findings were made as required by *Miller*. In examining the conduct in question, we may also look to the report of proceedings provided. *People ex rel. Woodward v. Oliver* (1975), 25 Ill. App. 3d 66, 322 N.E.2d 240, *cert. denied*, ___ U.S. ___, 46 L. Ed. 2d 255, 96 S. Ct. 275.

■■ Contemnor's actions in loudly stating that he was withdrawing the certificate of his client's police service, although stated in a rude manner, is the type of statement of counsel which the court should view with forbearance and not sanction by contempt.

We affirm the second and third finding of contempt as described in this opinion and reverse the fourth finding of contempt. We remand the cause to the circuit court of Logan County with directions that an amended mittimus issue reducing the fine imposed against defendant to the sum of $150.

Affirmed in part, reversed in part and remanded with directions.

SIMKINS, P. J., and REARDON, J., concur.