THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEFFREY H. HAAS, Contemnor-Appellant.

First District (5th Division)    No. 80-693

Opinion filed October 16, 1981.

Michael E. Deutsch and Dennis Cunningham, both of Chicago, for appellant.

C. David Vogel, State's Attorney, of Pontiac (Donald D. Bernardi, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Appellant, an attorney, appeals from a judgment entered in the criminal division of the circuit court of Cook County holding him in direct criminal contempt of court for leaving the courtroom during court proceedings contrary to and in violation of a direct order of the court. The court entered a finding of contempt and at a subsequent hearing entered an order *nunc pro tunc* adjudging appellant to be in direct contempt of court, and imposing a fine of $100.

The sole issue presented for review is whether the action of the attorney-appellant in departing the courtroom during court proceedings for the reason that he did not wish to participate in such proceedings in a death penalty case without the presence of the client was conduct sufficient to constitute a direct contempt.

The following facts are undisputed. On February 8, 1980, proceedings were in progress in the criminal division of the circuit court of Cook County in the case of The People of the State of Illinois v. John Bailey, *et al.* This case involved 16 defendants charged with, among other offenses, 15 counts of murder for the deaths of three prison guards arising out of the July 22, 1978, prisoner rebellion at Pontiac Correctional Facility. Appellant, an attorney, was appointed by order of court to represent Joseph Smith, one of the prisoners charged with the murders for which the State sought imposition of the death penalty. Appellant was one of 16 attorneys, including those for the defense and prosecution, appearing before the court on this date. Following the taking of roll to determine that all attorneys were present, the court began to address various matters which included the scheduling of pretrial motions, the timetables for submission of points and authorities, and in general the court's guidelines regarding the scheduling of hearings on pretrial matters. At this time the defendants, who were all in custody, remained locked up outside the courtroom. After several minutes the following discussion occurred:

"MR. HAAS: Judge, my client has not waived his appearance for this hearing and I don't know why the Defendants should not be here for this.

THE COURT: This is not a hearing. The Court is announcing rules of Court and schedules.

MR. HAAS: Judge, I think the Defendants are entitled to know that, too. I don't understand why they should not be here for this.

As far as my client goes, he has not waived his appearance.

THE COURT: Fine. These are non-[*sic*] matters that do not affect the rights of clients but they do affect counsel."

Following this dialogue, the court continued to announce certain timetables and address conflicts of schedules with the attorneys present. One of the defense counsel then brought to the court's attention the matter of possible exculpatory notes taken by one of the prosecutors, which had not been turned over to the defense. After some discussion between the court and defense counsel as to whether the motion dates should be extended because of the newly found statements, the prosecutor gave an explanation for failing to provide such statements. Another defense counsel then requested that the defendants be brought into the courtroom but the court advised him that the discussion on the matter was finished. Nevertheless the discussion was renewed by several counsel, turning then to the question of whether sanctions would be imposed against the State for this, and any future incidents that might occur. This question was resolved. The discussion thereafter turned again to the scheduling of dates for motions. About an hour had elapsed since the start of the day's hearing. Then, while still outside the presence of the defendants, the court permitted an attorney from the Department of Corrections to file a motion to quash subpoenas for psychological reports. At this point appellant and another defense attorney renewed their requests to have defendants brought into the courtroom. In response the court indicated that the mere filing of a motion was a procedural, not a substantive matter. The court then embarked on discussions with appellant and other counsel regarding the setting of the hearing on the motion to quash, advising counsel of the date, and further hearing from another defense counsel as to whether subpoenas would be necessary to secure parole files for discovery by defendants. At this point the following exchange began between counsel for another defendant and the court:

"MS. MURPHY: Your Honor, for the record, I will not proceed with the proceedings as long as my client is not allowed to be in the courtroom because I think that he should be a party, too. Therefore, I am going to—for the record, I am going to leave the courtroom until they are brought into these proceedings.

THE COURT: I am ordering you not to leave the courtroom.

MR. HAAS: I will also do the same thing.

THE COURT: I am ordering you not to leave this courtroom.

MR. HAAS: Judge, I cannot represent my client in good faith without having my client here.

THE COURT: I am ordering you not to leave.

(THEREUPON, Ms. Murphy and Mr. Haas left the courtroom.)

THE COURT: Mr. Haas and Mrs. Murphy will be ordered to appear before this Court at 11:00 o'clock on Monday morning to show cause why they should not be held in contempt of Court."

Following the incident, and after a brief discussion between the court and counsel, the court stated that it would entertain a motion brought by one of the defense counsel. The court thereupon ordered the defendants, Murphy and appellant, to be brought into the courtroom, and called for a short recess in the proceedings. Following the recess defendants were brought into the courtroom. The court, before proceeding on the motion, stated for the record that because Murphy and appellant had left the courtroom, in direct violation of the court's order to remain, he was finding them to be in contempt of court, and ordered them to appear before him on February 11, 1980, for further proceedings. After a hearing on that date, the court denied appellant's motion to vacate the order of contempt and entered an order *nunc pro tunc* finding appellant to be in direct criminal contempt of court and imposing upon him a fine of $100. Thereafter, upon a separate hearing, the court accepted an apology from Murphy for her actions, and accordingly ordered that no sanction be imposed against her. Upon review, we consider only the order of contempt with respect to appellant.

OPINION

It is a long standing rule in Illinois that acts which constitute contempt of court are those which are calculated to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute. (*In re Estate of Melody* (1969), 42 Ill. 2d 451, 248 N.E.2d 104.) Direct contempt takes place in the presence of the court and all elements of the offense are matters within the court's personal observation and knowledge. (*People v. McNeil* (1976), 42 Ill. App. 3d 1036, 356 N.E.2d 1073.) It is recognized that the contempt power is an extraordinary power of the court and accordingly should be exercised only in extreme situations. (*People ex rel. Woodward v. Oliver* (1975), 25 Ill. App. 3d 66, 322 N.E.2d 240, *cert. denied* (1975), 423 U.S. 927, 46 L. Ed. 2d 255, 96 S. Ct. 275.) A stand taken by counsel in good faith and in the interests of his client should not ordinarily serve as a basis of a charge for contempt. (*In re McConnell* (1962), 370 U.S. 230, 8 L. Ed. 2d 434, 82 S. Ct. 1288; *People v. Kuelper* (1977), 46 Ill. App. 3d 420, 361 N.E.2d 29.) A distinction is to be made, however, between contempt based on words of counsel as opposed to contempt based upon the acts or manner of counsel. In the former situation the court must act with great forebearance before punishing counsel, but in the latter less restraint is required. *People v. Roberts* (1976), 42 Ill. App. 3d 604, 356 N.E.2d 429.

Appellant strongly urges that his action in leaving the court constituted a good faith effort to represent his client in a situation involving unusual circumstances. One of these circumstances, appellant explains, was his client's particular mistrust of the criminal justice system in general, and of defense attorneys in particular. As a result, appellant states, his defendant along with others exacted the minimum promise from their lawyers that they would not go ahead with *any* part of the case without the defendants being present in open court.

In *People ex rel. Woodward v. Oliver* (1975), 25 Ill. App. 3d 66, 322 N.E.2d 240, *cert. denied* (1975), 423 U.S. 927, 46 L. Ed. 2d 255, 96 S. Ct. 275, a similar argument was considered and rejected. In that case the contemnor-attorney argued that his client was distressed by the frequency of *in camera* discussions during his trial. The appellate court held that it was the duty of the trial judge to direct the course of the trial and administer justice fairly and impartially. It was the responsibility of the attorney to educate to the purposes of side bar and in chambers discussion. The court refused to allow appellant to assert his client's particular sensibilities or appellant's failure to illuminate his client to shift responsibility for the contemptuous incident to the trial judge.

■■ We hold these principles to be applicable in the instant case. There is nothing in the record before us to suggest that appellant informed the court of his client's particular mistrust of defense attorneys nor is there any reference therein to the promise alluded to in appellant's brief. Even assuming the trial court had knowledge of these matters, they cannot be asserted to diminish the authority of the court to direct the course of the trial and administer justice fairly and impartially. It was the duty of appellant to educate his client to the purpose of pretrial hearings regarding the conduct and management of the litigation. The particular sensitivities of his client or his failure to illuminate his client cannot be used to shift the responsibility for his actions to the trial judge.

Appellant also contends that his disobedience of the trial court's direct and express order is not enough, alone, to support a finding of direct contempt. He argues that without an actual obstruction of justice there is no contempt. Appellant, therefore, urges reversal of his order of contempt on the basis of the similarity between his case and *In re McConnell.*

The decision in *In re McConnell*, however, is not controlling in the instant case. In that case the Supreme Court held that under 18 U.S.C. §401 (1948), in order for conduct to be punishable as contempt, it must be clearly shown that the conduct "actually obstructed the district judge in the 'performance of judicial duty.' " (370 U.S. 230, 234, 8 L. Ed. 2d 434, 437, 82 S. Ct. 1288, 1291.) The Supreme Court's opinion, however, is grounded upon Federal statutory limits imposed upon Federal courts'

contempt powers. Illinois has not so limited its courts' contempt powers to require an actual and material obstruction of justice. The record of the instant case does, nonetheless, show that a short recess was taken after the interchange and departure of appellant. It is also noted that the proceedings could properly resume only after appellant and Murphy were ordered returned to the courtroom. But as the court in *People ex rel. Woodward v. Oliver* points out, indeed, even in Federal courts which apparently require actual and material obstruction of the proceeding an essential element of the contempt, it has been stated:

> " '[T]his is not to say that attorneys may press their positions beyond the court's insistent direction to desist. On the contrary, the necessity for orderly administration of justice compels the view that the judge must have the power to set limits on argument. We simply encourage judges to exercise tolerance in determining those limits and to distinguish carefully between hesitating, begrudging obedience and open defiance.' *In re Dellinger* (7th Cir. 1972), 41 F.2d 389, 399." 25 Ill. App. 3d 66, 76-77, 322 N.E.2d 240, 247.

■■ The record in the instant case clearly sets forth an act of open defiance of the court's insistent direction to appellant to remain in the courtroom. Appellant's apparent threat to leave unless his demand was met was an attempt at coercion that, once carried out, amounted to an open defiance of the court's repeated and express order to him to remain in the courtroom. Certainly such an act of defiance was one which did derogate from the court's authority and dignity.

■■ Appellant next urges that the order of contempt be reversed because he did not intend his departure from the courtroom to be a contemptuous act. This argument is without merit. Whether a direct contempt has been committed depends upon the act and not the alleged intention of the offending party. *People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 364 N.E.2d 50, *cert. denied* (1978), 434 U.S. 1023, 54 L. Ed. 2d 771, 98 S. Ct. 750.

A large part of appellant's brief addresses the merits of his belief that his client was entitled to be present at the hearing. They hinge on whether the proceedings were procedural or substantive in nature and effect. Even assuming his position is correct, his direct defiance of the court's order cannot be condoned under the standard stated in *In re Estate of Melody*.

■■ In this court, appellee filed a motion to strike appellant's brief and dismiss appeal which was ordered to be considered with the case. The motion alleges that appellant's brief contains statement of facts, argument, and conclusions replete with matters dehors the record and that it unjustly reflects on the integrity and ability of the trial judge totally, which criticism is not warranted by anything in the record, all contrary to

Supreme Court Rule 341(e) (Ill. Rev. Stat. 1979, ch. 110A, par. 341(e)). We agree. Such violations of the rules are sufficient to warrant dismissal of an appeal. (*Biggs v. Cummins* (1959), 16 Ill. 2d 424, 158 N.E.2d 58, *cert. denied* (1959), 361 U.S. 868, 4 L. Ed. 2d 107, 80 S. Ct. 128.) In any event, in the absence of a stipulation, matters outside the record cannot be considered by this court on review. (*Strand v. United (Methodist) Church* (1973), 12 Ill. App. 3d 917, 298 N.E.2d 779, *rehearing* (1973), 16 Ill. App. 3d 744, 307 N.E.2d 621.) Therefore, appellee's motion to strike is granted as to the facts, arguments and conclusions in appellant's brief which are dehors the record, and in particular, those statements and portions which are critical of the trial judge, personally or as to his integrity and ability. We have relied upon a careful review of the record on appeal in concluding that the trial court acted most properly and ably therein, and was correct in its finding and order. (See *Harper v. Kennedy* (1958), 15 Ill. 2d 46, 153 N.E.2d 801.) Accordingly, the motion to dismiss the appeal will be denied.

For the foregoing reasons, the appellee's motion to strike appellant's brief is granted in part as hereinbefore set forth, appellee's motion to dismiss appeal is denied, and the order adjudging appellant guilty of direct contempt of court and imposing fine is affirmed.

Motion allowed in part and denied in part; order affirmed.

LORENZ and WILSON, JJ., concur.